[Civ. No. 43995. Second Dist., Div. Two. Mar. 20, 1975.]

SZABO FOOD SERVICE, INC., OF CALIFORNIA, Plaintiff and Respondent, v.
STATE BOARD OF EQUALIZATION, Defendant and Appellant.

## Counsel

Evelle J. Younger, Attorney General, Ernest P. Goodman, Mark W. Jordan and Philip C. Griffin, Deputy Attorneys General, for Defendant and Appellant.

Gibson, Dunn & Crutcher, James M. Murphy, Robert A. Miller and Marc R. Isaacson for Plaintiff and Respondent.

## Opinion

**FLEMING, J.**—The State Board of Equalization appeals a judgment which sustained the claim of Szabo Food Service, Inc. of California for a refund of $32,582.08 plus interest for sales taxes paid under protest. (Rev. & Tax. Code, § 6001 et seq.)[1]

The stipulated facts in summary: Szabo operated cafeterias on the premises of public and private employers. The employers provided the cafeterias as a convenience to their employees because of a lack of adequate nearby reasonably priced food facilities. The employers provided the physical plant and equipment; Szabo hired and trained cafeteria personnel, purchased, prepared and served the food, purchased maintenance supplies and services, and provided bookkeeping and administrative services.

Szabo entered a management operating agreement with each employer. Szabo retained little control over income and expenses since each employer determined or approved food prices and set cafeteria locations and hours. Prices were based on projected operating results and were in substantial relation to costs, but profitability varied from item to item and from cafeteria to cafeteria. The agreements therefore provided for Szabo to recover from cafeteria sales its expenses plus a management fee

---

[1]All statutory references are to the Revenue and Taxation Code.

based on a percentage of cafeteria sales (4 or 5 percent) or on a fixed fee ($300 to $500 per four-week operating period.) If cafeteria sales exceeded the total of Szabo's expenses plus its management fee (as it did in some cases), Szabo would pay the excess to the employer; if cafeteria sales fell short of that total (as it did in the majority of cases), the employer would make up the deficit.

Between 1960 and 1966 Szabo's total cafeteria sales under the management agreements approached $8,000,000 and total subsidies from employers amounted to more than $1,000,000.[2] In no case did an employer subsidy exceed 30 percent of sales. Szabo reported and paid sales taxes only on amounts received from employees for cafeteria sales. The board assessed the subsidies received from employers as part of gross receipts from the sale of cafeteria meals and collected additional sales taxes plus interest and penalties on these sums.

From the stipulated facts the trial court found that subsidies paid by employers under the management agreements were not subject to sales tax, and, without limiting that general finding, that management fees included in the subsidies were not subject to sales tax.

A threshold problem concerns the scope of judicial review of the board's assessment of sales taxes on the employer subsidies. The board characterizes its assessment as ˙an administrative "classification," to which the judiciary should give great deference and which it may overturn only if made arbitrarily and capriciously. (See *Henry's Restaurants of Pomona, Inc.* v. *State Bd. of Equalization,* 30 Cal.App.3d 1009, 1020-1021 [106 Cal.Rptr. 867]; *L.A.J., Inc.* v. *State Bd. of Equalization,* 38 Cal.App.3d 549, 552 [113 Cal.Rptr. 319]; *Mission Pak Co.* v. *State Bd. of Equalization,* 23 Cal.App.3d 120, 124-125 [100 Cal.Rptr. 69].) However, this is not a classification case. ▮ The board has not adopted any formal regulation interpreting employer subsidies. (See § 7051 and Gov. Code, § 11420 et seq.) Since Szabo has challenged the board's finding that the employer subsidies are subject to sales tax, the board's finding becomes subject to judicial review for errors in factual analysis and legal interpretation. (*Marchica* v. *State Board of Equalization,* 107 Cal.App.2d 501, 513 [237 P.2d 725].) Because the facts are undisputed, only the problem of applying the sales tax statute to the facts remains. (See *King* v. *State Bd. of Equalization,* 22 Cal.App.3d 1006, 1012 [99 Cal.Rptr. 802].)

[2]For convenience, dollar amounts are rounded. The board adjusted the gross sales amounts for certain exemptions before imposing the sales tax. The amount of the judgment reflects further adjustments stipulated by the parties.

The *sales tax* is a tax on the privilege of selling tangible personal property at retail. (§ 6051.) A *sale* is a transfer of tangible personal property for a consideration. (§ 6006.) A sale at *retail* is one for any purpose other than resale in the regular course of business in the form of tangible personal property. (§ 6007.) And *gross receipts* mean the total amount of the retail sale without any deduction for (a) the cost of the property sold, (b) the cost of materials used, labor or service cost, or any other expense, or (c) the cost of transportation. (§ 6012.)

The board and Szabo agree that payments from employees for cafeteria meals are subject to sales tax. They further agree that when an employer in operating a cafeteria for its employees takes a loss on the sale of meals no sales tax is payable on the implied subsidy provided by the employer to underwrite the cafeteria operation. They differ only on the applicability of the sales tax when an employer pays the subsidy to a third party to operate the employer's cafeteria. On this point the board contends the sale price of employees' cafeteria meals includes payment for services inherent in the preparation and service of the meals, that sales tax on the full price cannot be avoided by payment from different sources for the constituent elements of the services included in the total sale price. Szabo responds that the subsidies are not consideration for the sale of the meals, that they do not relate directly to the sale of any particular item or any particular price component of items.

Szabo's arguments are persuasive. ■ Gross receipts on a retail sale of tangible personal property are determined by the amounts received *in consideration for the sale of the property,* not by the profitability of the sale or the gross income of the retailer. ■ The employees who purchased the cafeteria meals provided the only consideration for the sale of the meals. Intermittent subsidies paid by employers merely guaranteed Szabo a reasonable profit and gave it an incentive to continue to provide cafeteria service to employees at reasonable prices. The subsidies cannot be traced to particular sales of particular meals. And, clearly, they were not part of a scheme to avoid sales taxes. (Accord, *H-W Corporation v. Department of Revenue,* (1967) Mich. Bd.of Tax Appeals, affd., *H-W Corp. v. Department of Treasury,* 15 Mich.App. 554 [166 N.W.2d 822].)

The board's arguments and authorities are not in point. ■ While it is true that the cost of services which are part of a sale must be included in gross receipts on the sale of tangible personal property (§ 6012, subd. (b); *Banken v. State Board of Equalization,* 79 Cal.App.2d

572 [180 P.2d 400]) and that amounts received from more than one source may be included in gross receipts (see *Anders* v. *State Board of Equalization,* 82 Cal.App.2d 88 [185 P.2d 883]), it is still necessary to establish that amounts received, from whatever source, are consideration for the sale, including services. As explained, the subsidies here were not consideration for the sale of cafeteria meals.

 All is not lost for the board. The conclusion that the employer subsidies are not part of gross receipts from the sale of cafeteria meals has a logical corollary: rebates paid by Szabo to employers when cafeteria sales exceed Szabo's expenses plus management fee may not be deducted from cafeteria sales in determining gross receipts.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

A petition for a rehearing was denied April 17, 1975, and appellant's petition for a hearing by the Supreme Court was denied May 14, 1975.