(No. 49448.

CHET'S VENDING SERVICE, INC., Appellant, v. THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed Jan. 20, 1978.—Rehearing denied March 30, 1978.*

UNDERWOOD, J., dissenting.

Walsh & Fielding, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield (Paul J. Bargiel and Karen Konieczny, Assistant Attorneys General, of Chicago), for appellee.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Following a field audit of the books and records of plaintiff, Chet's Vending Service, Inc., defendant, the Department of Revenue, issued a notice of tax liability under both the Illinois Retailers' Occupation Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 440 *et seq.*) and the Illinois Use Tax Act (Ill. Rev. Stat. 1971, ch. 120, par. 439.1 *et seq.*) for the period July 1, 1971, through October 31, 1974. Plaintiff filed a timely protest to the notice, and the matter was set for hearing before one of defendant's hearing referees. Plaintiff tendered payment of the use tax deficiency, and following the completion of the hearing defendant issued a "final assessment" of liability for retailers' occupation tax. Plaintiff sought administrative review in the circuit court of Cook County (see Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*), and the circuit court affirmed defendant's determination of liability and entered judgment in favor of defendant and against plaintiff in the amount of $5,827.11 and costs. Plaintiff appealed, and we

allowed its motion for direct appeal to this court. 58 Ill. 2d R. 302(b).

The facts are not in dispute. Plaintiff is engaged in the business of catering food and beverages to employees at industrial locations. It installs and maintains automatic vending machines for the sale of food and beverages, and also sells manually, "over cafeteria counters," beverages and food which it either prepares on the premises or brings to the site from a central food-preparation location.

The evidence shows that plaintiff has three types of contracts with the industries which it serves. Under the first type, plaintiff, without charge to the company-employer, supplies food and beverage service to its employees. As to these locations plaintiff pays the retailers' occupation tax on all moneys received from the sales to employees, and it retains any profits or bears any losses. There is no issue here concerning this type of operation. Under the second type of contract plaintiff pays the retailers' occupation tax on all moneys received from the sales to employees and retains any profit or bears any loss from its operation; but, in addition to the receipts from sales, it receives a "fixed fee" or monthly subsidy payment from the employer. Under the third type of contract, plaintiff, each month, renders the employer a statement of its sales and costs at the employer's plant, and if the receipts from sales to employees do not cover plaintiff's costs, the employer "makes up the difference." In computing its retailers' occupation tax plaintiff has not included in its gross receipts either the "fixed fee" or "guarantee" payments received from the employers. The question presented is whether the "fixed fee" monthly subsidy or the "guarantee" paid plaintiff by the employer is subject to the retailers' occupation tax.

Section 2 of the Retailers' Occupation Tax Act imposes a tax upon persons engaged in the business of selling tangible personal property at retail, measured by

"the gross receipts from such sales of tangible personal property." (Ill. Rev. Stat. 1971, ch. 120, par. 441.) In section 1 of the Act "gross receipts" are defined as "the total selling price or the amount of such sales" (Ill. Rev. Stat. 1971, ch. 120, par. 440), which in turn is defined as "the consideration for a sale valued in money whether received in money or otherwise" (Ill. Rev. Stat. 1971, ch. 120, par. 440). "Purchaser" is defined as one who through a sale at retail acquires the ownership of or title to tangible personal property for a valuable consideration. Ill. Rev. Stat. 1971, ch. 120, par. 440.

Plaintiff contends that the employees of the industrial locations where it provides its services are the "purchasers" of the food manually sold, that the "selling price" is the consideration received from such sales, and that the "gross receipts" are its total receipts from sales made through both its vending devices and its manual operations. It argues that the additional revenues which it received from the employer were not paid by the "purchaser" and did not constitute any portion of either the "selling price" or the "gross receipts." It contends too that the sums paid by the employer do not relate to any particular items sold by plaintiff to the employees, and that under the provisions of the Retailers' Occupation Tax Act, the employer is not the purchaser. It points out that when it pays an industrial owner a commission from the sale of products from its automatic vending machines located at the industrial site, defendant does not allow it to deduct such commission from its gross receipts (see Rule 26, Illinois Retailers' Occupation Tax Rules) and that when the industrial owner pays a subsidy to the taxpayer, the converse should apply. It argues that where, as here, the subsidy is unrelated to the sale of any particular items and the employer is not reimbursed by the purchaser of such items, the payments received should not be included in gross receipts.

Defendant contends that the fee or subsidy or the

guarantee payment paid plaintiff by the employer is an inseparable part of the consideration for the sale and transfer of tangible personal property and is includable in plaintiff's gross receipts subject to the retailers' occupation tax. It argues that the subsidy-payment arrangement represents a "two-party split" of the consideration for the transfer of tangible personal property between the employer and employee and that the payments received from both must be combined in computing the retailers' occupation tax.

The sales of food and beverages involved here effected a transfer of ownership or title to the employee-purchaser "for use or consumption," and the employee who bought the item was the "purchaser." Each sale was a separate transaction, and as defined in the statute (ch. 120, par. 440) the "selling price" was "the consideration *** valued in money whether received in money or otherwise, including cash, credits, property other than tangible personal property and services ***." The evidence shows no basis for relating any portion of the fixed fee or guarantee payment to any individual sale as part of the "selling price." To construe the terms "selling price" and "gross receipts" in the manner for which defendant contends would require us to hold that the manual or cafeteria-type sales at each industrial location during a calendar month were one sale to both the employer and the employees, the "selling price" of which was the aggregate of the sums received from the employees and the monthly payment received from the employer. "Taxing statutes are to be strictly construed and their language is not to be extended or enlarged by implication beyond its clear import, but in cases of doubt such laws are construed most strongly against the government and in favor of the taxpayer." (*Ingersoll Milling Machine Co. v. Department of Revenue,* 405 Ill. 367, 373.) We have considered the arguments of the parties concerning the nature of the

payments and conclude that whether the payments were made for the purpose of enabling plaintiff to reduce the cost of the food and beverages which it sells to the employees or to guarantee it a profit from its operation is wholly irrelevant. Under the clearly defined terms employed in the statute, the payments were not includable in plaintiff's "gross receipts."

Although we are not aware of any decision on this question by the highest court of another jurisdiction, we note that the holdings in *Szabo Food Service, Inc. v. State Board of Equalization,* 46 Cal. App. 3d 268, 119 Cal. Rptr. 911, H-W Corp. v. Department of Treasury, Mich. Bd. of Tax Appeals, *aff'd, H-W Corp. v. Department of Treasury,* 15 Mich. App. 554, 166 N.W.2d 822, and Mobil Research & Development Corp. v. Bob Bullock, Texas State Comptroller, Travis County, Texas (Case No. 239962), involving statutory provisions similar to those contained in the Retailers' Occupation Tax Act, are consistent with the conclusion reached.

For the reasons set forth, the judgment of the circuit court is reversed.

*Judgment reversed.*

MR. JUSTICE UNDERWOOD, dissenting:

The payments made by the company-employer to the plaintiff seem to me to fall within the plain, unambiguous language of the Retailers' Occupation Tax Act. Section 2 imposes the tax upon "persons engaged in the business of selling tangible personal property at retail at *** [a percentage] of the gross receipts from such sales ***." (Ill. Rev. Stat. 1971, ch. 120, par. 441.) Section 1 defines gross receipts as "the total selling price or the amount of such sales," and total selling price or the amount of sale is therein defined as "the consideration for a sale valued in money." Ill. Rev. Stat. 1971, ch. 120, par. 440.

In this case the only question is whether subsidies and

guarantees paid by the employer to the plaintiff are includible in the gross receipts measuring the tax. It is not disputed that without these subsidies ($360 per month in the case of Magnaflux) and guarantees plaintiff would not have provided the food and beverages. The conclusion that they are part of "the consideration for a sale" and therefore a part of "the gross receipts from such sales of personal property" seems to me inescapable.

My colleagues deem important their observation that the "evidence shows no basis for relating any portion of the fixed fee or guarantee payment to any individual sale as part of the 'selling price.'" (71 Ill. 2d at 42.) This is irrelevant and constitutes the basic error in the majority's rationale, for there is nothing in the Revenue Code which requires the taxing authorities to relate portions of consideration received to the individual items of property transferred or to individual transactions in which tangible property is transferred. Rather, the tax is an *occupation* tax upon those engaged in selling tangible personal property at retail, and it is measured by the gross receipts from those sales. If one were to pay a retailer $10 in order to induce the retailer to sell him two items, is it not apparent that the $10 is part of the consideration for the transfer, even though there is no definite basis for allocating the consideration to the sale of each item? One may have intended one dollar or five dollars as the inducement for one of the items, but the Department of Revenue need not prove the allocation. If a father slips the storekeeper a payment so the storekeeper will transfer presents for their mother to the children in exchange for the pennies they saved, can it be contended that the payment is not part of the retailer's gross receipts because there is no basis for relating the payment to each individual sale?

The court's opinion permits an employer to enter into an agreement with a caterer whereby the caterer would sell

employees food and drink at a very low price provided the employer pays a substantial subsidy, thus escaping the retailers' occupation tax on most of the consideration for the sale. Any third party with an interest in having goods transferred to others could use this device as a means of eliminating or substantially reducing the tax. Clearly, neither the intent nor the language of the Retailers' Occupation Tax Act permits this result.

The lower court cases from other States cited by the court do not compel this holding. In *Szabo Food Service, Inc. v. State Board of Equalization* (1975), 46 Cal. App. 3d 268, 119 Cal. Rptr. 911, the food-service company entered into a "management operating agreement" (46 Cal. App. 3d 268, 270, 119 Cal. Rptr. 911, 912) with each employer whereby each employer controlled revenue and expenses and took any profit or loss from the operation while the food-service company simply received its expenses plus a "management fee" (46 Cal. App. 3d 268, 270, 119 Cal. Rptr. 911, 912). Similarly, in H-W Corp. v. Department of Treasury, Mich. Bd. of Tax Appeals (Docket No. 700), *aff'd, H-W Corp. v. Department of Treasury*, 15 Mich. App. 554, 166 N.W.2d 822, the opinion of the Michigan Board of Tax Appeals shows that the employer enjoyed all profits and suffered all losses from the operation and that the food-service company merely received a management fee. The Texas district court case, Mobil Research & Development Corp. v. Bob Bullock, Texas State Comptroller, Travis County, Texas (Case No. 239962), also involved mere reimbursement of expenses plus management fees.

In our case plaintiff is not receiving a "management fee" in return for running the employer's cafeteria. Plaintiff is itself providing the food and service for a price, a part of which is paid by the employer.

We recently held that application of the Retailers' Occupation Tax Act was not determined by narrowly

viewing the transaction through the eyes of the transferee, emphasizing that the crucial element in this taxation scheme is the gross receipts of the retailer. (*Keystone Chevrolet Co. v. Kirk* (1978), 69 Ill. 2d 483.) There, a plaintiff purchased a new automobile for $4,800 on which a 5% retailers' occupation tax in the amount of $240 was paid. Subsequently, the manufacturer paid the purchaser a $500 rebate. The plaintiff there contended that the rebated amount should not be subject to the retailers' tax, notwithstanding the fact that the retailer received the full $4,800 price, because the net cost to the buyer was actually only $4,300. We rejected this contention because the statutory scheme imposes a tax upon the occupation of selling goods at retail, the tax to be measured by the gross receipts of the *seller;* the position of the purchaser or transferee was not a matter for consideration under the Act. Here, the court is considering only the "sale" which occurred at the point of transfer of the food. The majority incorrectly views the transaction through the eyes of the employee, and refuses to consider the company-employer as a purchaser because it cannot relate the subsidy and guarantee payments to these individual transactions between plaintiff and employee. The statute and this court's decisions make it clear that the tax is imposed upon the retailer and the amount of tax is determined by viewing the retailers' gross receipts from the retail sales he has made. The details of the individual transfers and the method and source from which those gross receipts come should not ordinarily interfere with the determination of tax liability.

I would affirm the judgment of the Cook County circuit court.