CANTEEN CORPORATION, Appellee, v. THE DEPARTMENT OF REVENUE, Appellant.

*Opinion filed May 26, 1988.*

96

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Karen S. Rosenwinkel, Assistant Attorney General, of Chicago, of counsel), for appellant.

Thomas G. Lyons and Michael W. Ward, of O'Keefe, Ashenden, Lyons & Ward, of Chicago (William R. Brandstrader, of counsel), for appellee.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Canteen Corporation sells at retail food and beverages by means of vending machines. In December 1983, Canteen filed with the Department of Revenue (Department) a claim for a credit of $868,609.49 for alleged overpayments of the Retailers' Occupation Tax between July 1980 and October 1983. Canteen alleged that it had paid the full rate of tax on all its sales during that period when it was entitled under section 2 of the Retailers' Occupation Tax Act (Act) (Ill. Rev. Stat. 1981, ch. 120, par. 441) to a reduced rate of tax for a large percentage of its sales. Section 2 provides in relevant part that food for human consumption which is to be consumed off the premises where it is sold, other than food which has been prepared for immediate consumption, is subject to a reduced rate of tax. After an administrative hearing, the Department denied plaintiff's claim for credit. The hearing officer, re-

lying on prior opinion letters issued by counsel to the Director of Revenue and a Department regulation (86 Ill. Adm. Code 130.310 (1985)), which declared that sales of food from vending machines are sales of food for immediate consumption, held that all of plaintiff's sales were therefore subject to the full rate of tax.

Canteen (hereinafter plaintiff) timely filed a complaint for administrative review in the circuit court of Cook County. The circuit court reversed the Department's decision and ordered it to issue a credit for the amount of plaintiff's claim plus interest. The court was unable to discern a public policy reason justifying the imposition of the full rate of tax on plaintiff while at the same time imposing a reduced rate of tax on other sellers of the same products. The court concluded that the Department regulation providing that sales of food from vending machines were sales of food for immediate consumption (86 Ill. Adm. Code 130.310 (1985)) was inconsistent with section 2 of the Act and that the regulation, as applied to plaintiff, violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2). We allowed a direct appeal to be taken to this court under Rule 302(b) (107 Ill. 2d R. 302(b)).

The issues presented for review are: (1) whether the regulation promulgated by the Department which provides that sales of food items from vending machines are sales of food prepared for immediate consumption is consistent with the statutory provisions governing exemptions from the Retailers' Occupation Tax; (2) if not, whether plaintiff established that items sold from its vending machines were consumed off the premises where sold; and (3) whether the classification of sales of food items from vending machines as sales of food prepared for immediate consumption violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2).

The relevant facts in this case are undisputed. Plaintiff sells at retail food and beverages by means of vending machines. According to Tom Brylka, tax manager for plaintiff, the food sold consists of prepackaged items such as chips, pretzels, candy, ice cream, milk, soft drinks, sandwiches, apples, and so on. All beverages are sold in closed containers and all of the food, except the sandwiches and fruit, is prepared and prepackaged by the manufacturer rather than plaintiff.

Brylka testified at the administrative hearing that when the food exemption of section 2 of the Act first went into effect, plaintiff paid the reduced rate of tax. Soon after, Brylka said, the Department conducted an audit and assessed a deficiency against plaintiff. Brylka also stated that plaintiff began to pay the full rate of tax on all of its sales from vending machines due in part to informal rulings made by the Director of Revenue in early 1980. Those informal rulings consisted of letters to the National Automatic Merchandising Association and the J & G Lace Company. The letters were written by counsel to the Director and stated that vending machines provide food primarily for immediate consumption.

Brylka also testified that plaintiff had eight vending districts in Illinois. Brylka stated that he directed the eight district managers to review the company books and records and estimate figures of the total sales of food consumed off the premises. Brylka's instructions indicated that "food consumed off the premises" meant food taken out of the room where the vending machines were located. However, according to Brylka, the district managers were to take into account specific site conditions or policies when determining the percentage of food consumed off the premises. In addition, Brylka instructed the district managers to exclude from the figures all sales of hot food items such as coffee or soup.

David Templeton, plaintiff's manager of vending for its Chicago South district, testified that he had been employed in the vending machine industry for 20 years. Based on his experience, he estimated that, in a room with three or four sets of tables and chairs and a bank of food vending machines, not more than 20% of the food sold would be consumed in that room.

Based on the reports compiled by the district managers and on plaintiff's tax returns for the relevant years, plaintiff prepared a claim of credit of $868,609.49 for the period of July 1980 to October 1983, for sales of food it alleged was consumed off the premises and not prepared for immediate consumption. All commissary-type sales, where the food was required to be consumed in the room, were eliminated from the claim for credit. Similarly excluded was a percentage of sales of food at locations where there were tables and chairs, and all sales of hot food.

Both the Department hearing officer and the circuit court judge found special significance in two exhibits introduced at the administrative hearing which we wish to highlight here—plaintiff's exhibits 12 and 13. Plaintiff's exhibit 12 consisted of a box containing a can of soda, a bag of potato chips, a bag of cookies, a candy bar, gum, microwave popcorn, a fruit drink and some cupcakes, all purchased from a 7-Eleven convenience store. Taxpayer's exhibit 13 consisted of a box containing the exact same items taken from plaintiff's warehouse to be installed in its vending machines. The items purchased from the 7-Eleven were taxed at the reduced rate of tax. (At the time of the hearing, the reduced rate of tax was 0%.) Templeton testified, and the hearing officer specifically noted, that there was absolutely no difference between the items from the 7-Eleven and plaintiff's warehouse. Templeton also stated that at least one of its manufacturer suppliers does not distinguish between or

segregate which packages go to plaintiff and which go to a grocery store.

Section 2 of the Act imposes a tax upon persons engaged in the business of selling tangible personal property at retail at the rate of 4% of the gross receipts from such sales. (Ill. Rev. Stat. 1981, ch. 120, par. 441.) Section 2 also allows for certain exemptions from the tax, including the following:

"However, with respect to food for human consumption which is to be consumed off the premises where it is sold (other than alcoholic beverages and food which has been prepared for immediate consumption) ***, such tax shall be imposed at the rate of 3% for sales or purchases on and after January 1, 1980 *** and at the rate of 2% on and after January 1, 1981." Ill. Rev. Stat. 1981, ch. 120, par. 441.

Section 12 of the Act authorizes the Department to promulgate and enforce rules and regulations relating to the administration and enforcement of the Act. (Ill. Rev. Stat. 1981, ch. 120, par. 451.) Pursuant to this authority, the Department has promulgated a regulation which provides in pertinent part:

"2) Gross receipts from sales of food for which facilities are provided so that it can be consumed on the premises where it is sold and gross receipts from sales of food which has been prepared for immediate consumption do not qualify for the reduced rate. For example:

A) gross receipts from sales of food and drinks by restaurants, coffee shops, cafeterias and other establishments selling food which has been prepared for immediate consumption or which provide facilities for on-premises consumption are subject to the full rate of tax.

B) concession stands, snack shops and other establishments which sell food items primarily (more than 50%) in individual sized servings (such as ice cream cones, bags of popcorn, candy bars and indi-

vidually served sandwiches) make sales of food for immediate consumption.

C) *sales of food items in vending machines are sales of food for immediate consumption.*

D) sales of all hot food and hot food products are sales of food for immediate consumption.

3) Delicatessens, markets, dairies and bakeries and other establishments which sell food items primarily (more than 50%) in quantities greater than individual sized servings incur the reduced rate on gross receipts from retail sales of food items." (Emphasis added.) 86 Ill. Adm. Code 130.310 (1985).

The Department argues that regulation 130.310 is consistent with, and furthers the purpose of, the Act. According to the Department, the legislative history of the amendment creating the food exemption indicates that the purpose of the legislature was to avoid a regressive tax on retail food sales. The Department defines a regressive tax as a tax for which the rate proportionately decreases as the tax base increases. The Department contends that to avoid the regressivity of a tax on the sale of food, the legislature sought to tax necessities at a lower rate than luxury or nonstaple items. According to the Department, food items purchased at a grocery store are necessities which should receive the reduced tax rate because the purchasers will most likely consume the food items at home as a meal either by themselves or with their family. On the other hand, the Department asserts, the locations of, and services provided by, vending machines permit the inference that the machines are situated so as to supply consumers with immediate refreshment in places of employment, educational facilities and similar establishments. The Department contends that the most likely competitors of vending machines are snack shops, coffee shops and restaurants rather than grocery stores. The Department concludes that regulation 130.310, classifying sales of food from vending machines as sales of food

prepared for immediate consumption, is valid based on the method of merchandising, and is consistent with the purpose of the statute.

Plaintiff responds that Department regulations can neither limit nor extend the scope of the statute, and that regulation 130.310 is inconsistent with the terms of section 2. According to plaintiff, the Department has ignored the requirement that the food be "prepared" for immediate consumption. Plaintiff argues that the evidence established that food sold from its vending machines was prepared identically to that sold in grocery stores and other establishments to which the Department concedes the reduced rate of tax applies. The foods plaintiff sells were, plaintiff states, prepared to last for days, weeks, or, in the instance of canned beverages, even months before consumption. Plaintiff contends that it is inconsistent to assert that one set of products is prepared for immediate consumption simply because it is sold through a vending machine while an identically prepared product is not prepared for immediate consumption because it is sold over the counter. Plaintiff concludes that regulation 130.310 is fundamentally inconsistent with the terms of section 2 and is therefore invalid.

In determining the scope of section 2 of the Act, it is axiomatic that the court must ascertain and give effect to the legislative intent (*Page v. Hibbard* (1987), 119 Ill. 2d 41, 46), and that inquiry appropriately begins with the language of the statute (*Metropolitan Life Insurance Co. v. Washburn* (1986), 112 Ill. 2d 486, 492). In construing statutory provisions, the court should consider not only the language of the statute but also the purposes to be attained by the law. (*People v. Haywood* (1987), 118 Ill. 2d 263, 271.) Although courts give substantial weight and deference to an interpretation of a statute by the agency charged with the administration and enforcement of the statute, such interpretations are not binding on

the courts. (*People v. Roos* (1987), 118 Ill. 2d 203, 212.) In addition, we must be mindful of the admonition that taxing statutes are to be strictly construed and their language is not to be extended or enlarged by implication beyond its clear import. *Chet's Vending Service, Inc. v. Department of Revenue* (1978), 71 Ill. 2d 38, 42.

## I

The preliminary question is whether all sales of food from vending machines are sales of "food which has been *prepared* for immediate consumption" (emphasis added) (Ill. Rev. Stat. 1981, ch. 120, par. 441). The statute does not specifically define that phrase or any of its constituent terms such as "prepared" and "immediate." An undefined statutory term must be given its ordinary and popularly understood meaning. (*Lake County Board of Review v. Property Tax Appeal Board* (1988), 119 Ill. 2d 419, 423.) The plain and common meaning of the term "prepare" is to make ready. In the context of food for human consumption, food preparation would include the steps or acts necessary to make the food ready to eat. However, the common meaning of "prepared" would not include the actual sale of the food. Nor would the meaning of "prepared" include the placing of the food on a shelf or in a vending machine. The sale and merchandising of food may be necessary to its eventual consumption but they are not necessary to its *preparation*.

The legislature's use of the term "immediate" is also of special significance. All food sold at retail has been either prepared for consumption or not; food prepared for *immediate* consumption must therefore be a subclass of food prepared for consumption. The only possible subclass other than food "prepared for immediate consumption"—that is, food made ready to be eaten without substantial delay—would be food which has reached its final stage of preparation but which is to be eaten only after

a delay or at a later time. In other terms, the timing of "immediate" begins at the final stage of preparation (which would include any reheating or mixing by the retailer).

The question arises as to when "consumption" begins. We do not believe the legislature intended that retailers interrogate their customers as to when they plan on eating the food. Indeed, any sort of such policing would be impractical and absurd. Instead, we find it reasonable to create a presumption that purchases of food from establishments which sell food items primarily in individual-sized servings will be eaten without substantial delay. The Department itself has adopted such a presumption in its regulations (86 Ill. Adm. Code 130.310(b)(2)(B), (b)(3)).

Legislative standards are to be viewed in the light of reality and are not to be stripped of common sense. The test established by the plain and common meaning of the phrase "prepared for immediate consumption" was not meant to establish arbitrary loopholes. For example, consider a delicatessen or catering service that prepares several dozen sandwiches or donuts in the morning. The sandwiches or donuts sold soon after the deli or caterer begins serving would be subject to the full rate of tax because there is no substantial delay between the time the food has been made ready to be eaten and the time it is actually consumed. It would be absurd to suggest that the sandwiches sold earlier in the day would be subject to the full rate of tax whereas the sandwiches sold later would be subject to a reduced rate. If one of the sandwiches or donuts prepared at the same time is subject to the full rate of tax, all are.

Having established the parameters of the phrase "food prepared for immediate consumption," we must next apply the standards to the facts of the case. A person claiming an exemption from taxation has the burden

of proving clearly that he comes within a statutory exemption. (*United Air Lines, Inc. v. Johnson* (1981), 84 Ill. 2d 446, 455.) The evidence adduced at the administrative hearing demonstrated that the majority of the food sold from plaintiff's vending machines is prepared and prepackaged by the manufacturer and then shipped to plaintiff's warehouse where it is then distributed and placed by plaintiff in its vending machines. Those items—candy (23.1% of the claim), pretzels, chips and other snacks (11.3%), milk or juice (5.9%), pastries (4.4%), and canned beverages (46%)—are ready to eat before they are even placed in the vending machines, much less sold. For those items, there is a substantial delay between the final stage of preparation and the time of consumption. Plaintiff met its burden of establishing that the sales of those items were not sales of food for immediate consumption.

The hot foods sold from plaintiff's machines do not reach the final stage of preparation until they are heated and mixed by the machine at the time of sale, after which they are immediately consumed. The hot food items are therefore foods prepared for immediate consumption and were properly excluded by plaintiff from the claim for credit.

Finally, 4.3% of plaintiff's claim for credit consisted of general food items such as wrapped sandwiches, fruit, prepackaged puddings, etc. The record is unclear as to when plaintiff prepared the sandwiches and as to what portion of the general food items consisted of sandwiches. We find that plaintiff has not met its burden of proving that the general food items were not prepared for immediate consumption. Those items, 4.3% of the claim, should have been excluded from the claim of credit.

As has been demonstrated, not all sales of food from vending machines are sales of food "prepared for imme-

diate consumption" under section 2 of the Act. Department regulation 130.310(b)(2)(C) provides to the contrary that all sales of food from vending machines are sales of food for immediate consumption. That regulation pays no heed to the requirement of the statute that the determination of whether consumption is immediate be made based on the time of the final stage of preparation rather than the time of sale. Administrative rules can neither limit nor extend the scope of a statute. (*Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 247-48.) Regulation 130.310(b)(2)(C) improperly extends the scope of section 2 of the Act.

Moreover, the Department's construction of the phrase "prepared for immediate consumption" leads to the anomalous result so cogently demonstrated by plaintiff's exhibits 12 and 13; one set of products purchased from a convenience or grocery store would be taxed at the reduced rate while an identical set of food products prepared in the exact same manner would be taxed at the full rate. Such a result is unreasonable.

The Department suggests that such a result is not unreasonable because its regulation is consistent with the legislature's purpose to continue taxing "luxury" items at the full rate while taxing "necessities" at a reduced rate. Such a distinction between luxuries and necessities is not only impractical but is also found nowhere within the language of the statute or in the legislative debates. Moreover, we fail to see why a bag of chips purchased at a grocery store is a necessity while the same bag of chips purchased from a vending machine is a luxury. Nor do we see why lobster should be considered a necessity merely because it is purchased at a grocery store.

The Department also contends that, given the purpose of the legislature to avoid a regressive tax, it is proper to consider the "method of merchandising" of food when determining whether it is prepared for imme-

diate consumption. According to the Department, vending machines are located in workplaces, educational facilities and similar establishments. The Department seems to suggest that it is proper to infer, based solely on the location of the vending machines, that people who buy food from such machines can better afford the full rate of tax than people who buy food at grocery stores.

The Department's position is untenable. Laborers and students are not automatically excluded from the class of people who need tax relief. Moreover, the legislature used the term "prepared," not "sold." As demonstrated above, the term "prepared" does not encompass the sale or merchandising of the food, or the location of the sale of the food. We are thus precluded from considering the method of merchandising when determining whether food has been prepared for immediate consumption.

The Department has cited to several cases from other States wherein a sales tax on sales of food from vending machines was upheld. (*E.g., Taxpayers Lobby of Indiana, Inc. v. Orr* (1974), 262 Ind. 92, 311 N.E.2d 814; *Associated Food Services, Inc. v. Commissioner of Taxation* (1974), 298 Minn. 277, 216 N.W.2d 253; *CRH Catering Co. v. Commonwealth* (1987), 104 Pa. Commw. 91, 521 A.2d 497.) The Indiana, Minnesota and Pennsylvania statutes involved in those cases used language quite different from the phrase "prepared for immediate consumption." We do not find the cases particularly helpful in interpreting Illinois' statute.

## II

The Department next contends that even if all of the sales from plaintiff's vending machines were not sales of food prepared for immediate consumption, plaintiff incorrectly defined "premises" when preparing its claim for credit and thus failed to establish that its sales were of food "consumed off the premises where it is sold" (Ill.

Rev. Stat. 1981, ch. 120, par. 441). Resolution of this issue rests solely on the definition of "premises."

The term "premises" is not defined in the statute. The Department suggests that we adopt a "metes and bounds" definition of "premises." Under such a definition, according to the Department, the premises would include the entire building in which a vending machine is located.

Plaintiff, on the other hand, suggests that we adopt a "control" definition of "premises." According to plaintiff, "premises" for purposes of vending machine sales would be the limited area over which the vendor exercises control, whether by lease, contract, license or other means. Plaintiff's definition of premises would effectively mean the vending machine alone.

Several States have adopted the definition presented by plaintiff. (*E.g., Moore v. Arthur Realty Corp.* (1963), 95 Ariz. 70, 386 P.2d 795; *Automatic Merchandising Council v. Glaser* (1974), 127 N.J. Super. 413, 317 A.2d 734.) The Department asserts that Ohio has adopted by statute the metes and bounds definition of premises, citing the case of *Buddies Lunch System, Inc. v. Bowers* (1960), 170 Ohio 410, 165 N.E.2d 924.

The term "premises" has various meanings depending on the context in which it is used. We decline to adopt the definition of "premises" proffered by the Department. The Department itself has not adopted such a definition of premises. Department regulations 130.310(b)(2) and (b)(3) define premises as those areas in which "facilities are provided so that [food] can be consumed on the premises" (86 Ill. Adm. Code 130.310(b)(2), (b)(3) (1985)). Under the Department's own definition, only those areas of a building where facilities for eating are provided would be part of the premises. We also note that the metes and bounds theory would lead to anomalous results. For example, under the metes and bounds

theory, sales of food to the residential tenants of an apartment building wherein a grocery store is located would be subject to the tax, for such sales of food would be for consumption within the boundary of the realty where the sales are made.

We also decline to fully accept plaintiff's definition of premises as the vending machine alone. That such a limited definition is contrary to the common understanding of premises in the present context is demonstrated by plaintiff's own reluctance to claim credit for sales consumed within the room in which the machines are located. Instead, all adversary posturing aside, we adopt the definition of "premises" expressed in plaintiff's claim itself and in the Department's own regulation. "Premises" in the context of vending machines is the area over which the vendor exercises control, whether by lease, contract, license or otherwise, and, in addition, the area in which facilities for eating are provided—that is, the area designated for, or devoted to, use in conjunction with the business engaged in by the vendor.

Plaintiff's claim of credit accurately reflects the definition of "premises." However, the Department, in a brief and unsupported statement, asserts that the evidence offered by plaintiff of the percentage of food consumed off the premises failed to satisfy its burden of proof. The Department is apparently suggesting that the evidence presented by plaintiff was insufficient or improper in some manner; however, the Department does not provide any reason or citation to relevant authority to support that proposition.

Supreme Court Rule 341(e)(7) provides that a litigant's brief must contain citations to the relevant authority supporting the argument on appeal (107 Ill. 2d R. 341(e)(7)). A court of review is entitled to have the issues clearly defined and to be cited pertinent authority. A point not argued or supported by citation to relevant authority fails

to satisfy the requirements of Rule 341(e)(7). (See *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 482-83.) The Department has thus waived the issue of whether the evidence offered by plaintiff was proper and sufficient evidence to establish what percentage of the sales of food from its vending machines were consumed off the premises.

Accordingly, we find that, except for the 4.3% of the claim related to general food items, such as sandwiches, plaintiff has established that it is entitled to a credit for the appropriate percentage of tax paid on the sales of food not prepared for immediate consumption and consumed off the premises where sold.

## III

Plaintiff's last contention is that the Department's regulation classifying sales of food items from vending machines as sales of food prepared for immediate consumption violates the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, §2). We have already held that the Department's regulation is invalid as inconsistent with section 2 of the Act. Therefore, no constitutional issue remains.

For the reasons set forth above, the order of the circuit court is affirmed in part and reversed in part. That portion of the order directing the Department to issue plaintiff a credit for the amount of its claim plus statutory interest is reduced by the 4.3% of the claim relating to the general food items which plaintiff failed to establish were not prepared for immediate consumption. The remainder of the order of the circuit court is affirmed.

*Affirmed in part;*
*reversed in part.*