STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-84

FLIK INTERNATIONAL CORP.,

DONALD L. GARBRECHT
LAW LIBRARY

MAY 28 2002

Petitioner

v.

STATE TAX ASSESSOR,

Respondent

**DECISION AND ORDER ON PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on petitioner's motion for summary judgment. The underlying action is a petition for review pursuant to M.R. Civ. P. 80C in two counts both based upon the assessments and reconsideration decision of the respondent. Count I asks the court to find the decision in error and unlawful to the extent the respondent assesses a tax and interest with respect to "operating cost reimbursements and management fees." The second prayer for relief asks the court to find error in the Assessor's determination of 7% sales tax for meals sold by the petitioner at all places of business.

Petitioner has moved for summary judgment alleging the lack of genuine issue of material fact and its entitlement to judgment as a matter of law. Respondent responds with regard to said motion agreeing with no genuine issue as to any material fact but asserting that the Assessor is entitled to judgment as a matter of law.

In 1997, Compass Group USA, Inc. and MBNA America Bank, NA, entered into a "Manual Food and Vending Services Agreement," referred to as "the contract." Compass then assigned its rights and obligations under the contract to its wholly-owned subsidiary Flik International Corp., the petitioner herein. During the audit period in question, the petitioner managed and operated cafeterias owned and

equipped by MBNA at MBNA facilities in Belfast and Camden for the service of food to MBNA employees at those facilities. Flik provided all services to manage and operate the cafeterias and purchased all food products that were sold. The patrons of the cafeterias paid an established price for the food at the cafeterias based upon the cafeteria menus. The petitioner collected and remitted sales tax based upon the price charged to the cafeteria patrons. MBNA set the stated price to be charged to the patrons. In its interest in increased productivity by keeping employees on the premises, these prices were generally at or below local retail prices. The cost of operating the cafeterias exceeded the gross sales revenues at the cafeterias. In addition to the cafeteria sales revenues from the sales of food to the patrons, Flik received an amount directly from MBNA, referred to by the petitioner as the "contract payment." This contract payment was an amount equal to the cafeteria operating expenses per week plus a management fee equal to the greater of 3% of cafeteria sales or a minimum dollar amount plus an overhead charge equal to the greater of 2% of cafeteria sales or a minimum dollar amount less the total of the cafeteria sales revenues in the same month. The "management fee" was really a "guaranteed profit" inasmuch as Flik did not manage any MBNA employees. The respondent State Tax Assessor assessed the sales tax on the amount of the contract payments plus cafeteria revenues.

Under the contract, in addition to the cafeteria sales as described, the petitioner also acquired, prepared and served food and drink to MBNA's invited guests at MBNA's sponsored events, acting in the capacity as a caterer. In addition, Flik also served food and drink in MBNA's daycare facilities and sold items at a sundry shop known as the "Gold Post." In February of 1998, Flik obtained a class I - Qualified Caterer License for the sale of liquor to allow it to sell liquor at special catered events

2

held by MBNA. However, Flik separated its catering activities so that "Camden Catering" and "Belfast Catering" handled catering for meetings held in conference rooms at the MBNA facilities where MBNA employees worked and where no alcohol was served and the "special functions" catering unit handled catering at all events where alcohol was served. Under its liquor license, the petitioner named Ginley Hall as its licensed premises. Ginley Hall is located in Northport separate and apart from the cafeterias in Camden and Belfast. Under its license, Flik was authorized to sell liquor wherever it provided its meals. However, in order to legally serve liquor at locations other than Ginley Hall and for only a specific time period, it was required to submit an application to be approved by the municipality and the State Liquor Commission. This was referred to as "temporary permit." While Flik had an underlying license to sell alcoholic beverages at any location, subject to the requirement for temporary permit, it never sought nor obtained a temporary permit to serve liquor in any of the Belfast or Camden cafeterias, the Gold Post or the MBNA child care facilities.

Flik collected sales tax at the regular 6% or the 5 1/2% rate on cafeteria sales, Gold Post sales and child care center sales as well as the catering of MBNA workplaces by the Belfast Catering and Camden Catering units. Flik collected tax at the 7% rate on all sales by the special functions catering unit. The Assessor assessed sales tax at the 7% rate on all sales by Flik of food after January, 1998 other than the sales by the special functions catering unit which had already been taxed at that rate.

In a nutshell, MBNA contracted with the petitioner to operate cafeterias for its employees at their place of employment at subsidized pricing. The purpose was to provide an environment for the employees to remain in the building, enjoy competitive of low costs meal costs, have a place to "brown bag" and to receive an elevated level of

3

service provided by an extra level of staffing and a longer level of operating hours. MBNA guaranteed Flik all of its overhead expenses and a profit. In addition to operation of the cafeterias, petitioner operated a catering service licensed to sell alcohol which provided such catering services to both nonalcohol workplace functions and social events on and off premises where alcohol was served.

The State Tax Assessor considers Flik to be a catering organization selling food under terms of a contract in which the price of the food is the contract price, i.e., the cost of sales plus the subsidy. In addition, the State Tax Assessor considers the possession by Flik of a class I liquor license to require an elevated rate of taxation on all its food sales based upon its authority to serve liquor under all circumstances. Petitioner objects indicating that consideration exists for the management fees and overhead operating costs by virtue of the additional staffing and longer hours provided by the petitioner, all for the benefit of MBNA and its employees. Further, under a theory that a licensed caterer is licensed at any location, all sales are in contemplation of transactions under the license and therefore subject to the higher tax.

There is no law in Maine on the issue of whether cost reimbursements and subsidies should be included in the sale price for taxation purposes. Apparently, the arrangement between MBNA and Flik is not uncommon in the industry and there are several extrajurisdictional cases that are entirely on point. There is, however, a split within those cases on whether sales tax may be assessed on so-called "management fees." In *Szabo Food Service v. State Board of Equalization*, 46 Cal. App. 3d 268, 119 Cal. Rptr. 911 (1975), the case most heavily relied on by Flik, the court ruled that where subsidies could not be traced to particular sales of particular meals, they were not consideration for the sale of cafeteria meals. Instead, the court found that the subsidy

4

provided "an incentive [for the food service provider] to provide cafeteria service to employees at reasonable prices." *Id.* at 272. *See also Dining Management Services, Inc. v. Comm'r of Revenue*, 404 Mass. 335, 534 N.E.2d 1178 (1989); *Chet's Vending Service, Inc. v. Dep't of Revenue*, 71 Ill.2d 38, 374 N.E.2d 468 (1978); *H-W Corp. v. Dep't of Revenue*, 15 Mich. App. 554, 166 N.W.2d 822 (1967). This is precisely the argument Flik presents to this court. The contract payments it receives are not taxable because the consideration received in exchange for the transfer of a tangible item of food is entirely received at the cafeteria cash register. The contract payments are instead fees for cafeteria operation and management services sold to MBNA.

The State relies on cases from Georgia and New York holding exactly the opposite. In *Davis v. Chilivis*, 42 Ga. App. 679, 237 S.E.2d 2 (1977), the court decided that sales tax was due on the full sales price of the meals, regardless of the fact that payment for the food came from two different sources by two different methods. The court analogized the total amount tendered to the food service provider as the functional equivalent of the full sales price paid by the purchaser/employee at the cash register. Similarly, in *Stouffer Management Food Service, Inc. v. Tully*, 415 N.Y.S.2d 559 (1978), the court ruled that reimbursed costs and management fees were subject to sales tax where employees paid a reduced price for food. In addition, to the extent that petitioner argues the contract payments are simply fees for cafeteria operation, and management services sold to MBNA, the nexus for all activities under the contracts is the sale of food and that clearly such services that are affiliated with the sale of food come within the statute in question.

The quandary for this court is that the analyses provided by the case law submitted by both petitioner and respondent appears sound. The cases wherein the

5

employer pays all of the costs of food for employees is not difficult to analyze since the only criteria for sale of the food is the contract price. There is no question but that some of the fees paid by MBNA are directly related to the sale of food and that some services related to that sale of food come within the sales tax requirement. However, by the same token, there are additional considerations provided by Flik to MBNA which may not be directly related to the sale of food. For example, the court understands there is no requirement that an employee purchase the petitioner food or that he or she could not simply bring a sandwich from home and purchase a drink at the local convenience store. Nor is there any requirement that the employees eat in the cafeterias. If no employees eat in the cafeteria for a monthly period, the court presumes under the facts presented to it that Flik is still entitled to its costs and the profit. On the other hand, if the volume of such sales should reach a point where Flik's revenues are in excess of the contract price, under the terms of the agreement MBNA is entitled to a reimbursement. Therefore, notwithstanding the case law and the circumstances of this contract, the court believes it must confine itself to the Maine statute and its plain language.

Title 36 M.R.S.A. § 1811 provides:

> A tax is imposed on the **value** of all tangible personal property and taxable services sold at retail in this state. . . . **Value** is measured by the **sale price**, . . . .

(Emphasis supplied). 36 M.R.S.A. § 1752(11) defines "retail sale" as "any sale of tangible personal property in the ordinary course of business . . ." Section 1752(14) defines "sales price" as the total amount of a retail sale valued in money, whether received in money or otherwise." Section 1752(14)(A) defines "sale price" includes: "(1) Services which are a party of a retail sale; and (2) All receipts, cash credits and property of any kind or nature and any amount . . ."

6

The court notes that value is not measured by cost of preparation or service, it is not measured by any contract price, it is not measured by any concept of gross receipts (as is required in some states) and, most importantly, it is not measured by fair market value. If the food is supplied by a food service organization under contract with the employer at no cost to the employees, the only "sales price" to be "measured" is the amount of the contract. In the contract in question, the only evidence of value as measured by the sales price is the amount paid at the cash register.

This court finds nothing in Maine law to suggest that the State Tax Assessor looks behind the sales price to determine the basis for that price. Under those circumstances, the only way the sales tax statute can maintain any consistency is to rely upon the form of the "sale price" notwithstanding the substance. That interpretation causes the State Tax Assessor to assess the sales tax as to its value as measured by the sales price whether it is a thrift shop maintained by Goodwill Industries or the main floor at Filene's Department Stores. No other measure for purposes of sales tax assessment exists under the M.R.S.A. that could be contemplated by the statutes. Accordingly, it is this court's determination that the sales price for assessment of sales tax in regard to the food services provided by Flik is the price charged at the cash register for the food in question.

With regard to the second issue raised by Flik's petition, Flik contends that the State has misapplied the 7% tax that applies to food sales at establishments that are licensed for the consumption of liquor. Flik agrees that it is subject to the increased tax when it sells food at Ginley Hall in Northport because that is the facility listed on the liquor license. It also concedes that the higher tax is applicable when it serves alcohol at catered events at other locations for which it has procured a temporary liquor permit.

7

However, Flik takes the position that it makes no sense to charge the higher rate on all of its food sales in all of its locations because it is only permitted to serve alcohol at Ginley Hall or by special permit.

The State maintains that Flik's status as a "catering establishment" under the law subjects it to the higher tax at all venues. The State does not read the language of the liquor license as limiting Flik to service of alcohol only at Ginley Hall or by special permit.

Title 36 M.R.S.A. § 1811 reads:

"The rate of tax is 7% on the value of prepared food sold in establishments that are licensed for on-premises consumption of liquor pursuant to chapter 43 of Title 28-A.

36 M.R.S.A. § 1811 (1990), amended by Laws 2001, c. 439. The statutes further go on to say that:

Notwithstanding any other provision of law, the bureau may issue licenses under this section for the sale of spirits, wine and malt liquor to be consumed on the premises to qualified catering services as defined in section 2, subsection 15, paragraph P."

28-A M.R.S.A. § 1076.

Finally, we read:

The following may be licensed establishments :
. . .
P.     'Qualified catering service' means a catering establishment as defined in Title 22, chapter 562, and licensed by the Department of Human Services.

28-A M.R.S.A. § 2(15)(P).

The court finds the respondent's position to be less persuasive. The liquor licensing statute specifically defines "premises" under the licensing provision for qualified catering services as "the premises where the qualified catering service is selling

8

and serving liquor, either its principal place of business or the premises where the event being catered is held." 28-A M.R.S.A. § 1076(1)(A). It would appear to be an illogical application of the law to subject food sales at the MBNA daycare facility to a higher sales tax rate because Flik holds a liquor license in association with catered events at Ginley Hall. Furthermore, the basic license issued by the Department of Public Safety's Bureau of Liquor Enforcement in the name of "FLIK International Corp. d/b/a Flik at MBNA Brandwell's Cafe/MBNA New England Ginley Hall Atlantic Highway, Northport, Maine 04915" contains the following:

> This certificate is valid only between the date issued and expiration date appearing herein. It may be used only by the named holder at the location for which issued. The person named herein is authorized to sell or dispense alcoholic beverages with alcoholic content permitted by law for the permits designated below.

In order for Flik to serve alcohol at a location other than Ginley Hall as stated in the basic license, it must file a "application and notification of catered function by qualified catering organizations." On that application, among other things, it must recite its permanent license number and give the title and purpose of the event, the location of the event and the address. It also must include a description of the specific area to be licensed as well as the date of the event and the time with the approximate number of persons attending. It also must designate the sponsor of the event. The application contains a section which allows an indication of approval or not approval and the statement "all applications must have municipal approval -- see reverse side." In addition to other provisions for entry by the municipal officers' approval, the final statement on the application reads: "This application must be submitted to the Department of Public Safety, License and Inspection Unit - Liquor, 72 hours in advance of said event."

9

Under these circumstances, it would appear to this court that the place of providing food in a catered event is not a "licensed premises" if other then the licensed premises as stated on the license itself, without the special application permit approved by the Bureau of Liquor Enforcement and the municipality. Under those circumstances, it would appear that it is not contemplated that the petitioner is a defined caterer under the liquor laws requiring an imposition of the 7% sales tax on sale of food at all locations.

Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. M.R. Civ. P. 56(c); *Saucier v. State Tax Assessor*, 2000 ME 8, 4, 745 A.2d 972, 974. "A genuine issue of material fact is present only when 'there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial.' " *Francis v. Stinson*, 2000 ME 173, 37, 760 A.2d 209, 217 (quoting *Prescott v. State Tax Assessor*, 1998 ME 250, 5, 721 A.2d 169, 171-72). Generally, "a motion for summary judgment is inappropriate in an appeal on questions of law only" from administrative agencies. *Martin v. Unemployment Ins. Comm'n*, 1998 ME 271, ¶ 8, 723 A.2d 412 (citations omitted). However, a court functioning in its capacity as a court of appeals may, in some specific cases, have the authority to find facts. *See* 36 M.R.S.A. § 151 (Supp. 2001) (stating that Superior Court reviewing the decision of the State Tax Assessor "shall make its own determination as to all questions of fact or law"); *Jackson Advertising Corp. v. State Tax Assessor*, 551 A.2d 1365, 1366 (Me.1988) (citing *Frank v. Assessors of Skowhegan*, 329 A.2d 167, 170 (Me.1974)) (discussing reviewing court's power to make a limited review of questions of fact in appeals from decisions of the State Tax Assessor). *See also Fairchild Semiconductor v. State Tax Assessor*, 1999 ME 170,

¶ 7, 740 A.2d 584 (Superior Court serves as forum of origin for a determination of both facts and law when reviewing decisions of the State Tax Assessor).

The court concludes that there are no genuine issues of material fact and the facts as stated in this decision reflect those matters of evidence which are substantially agreed to by the parties. Under the law as this court finds it, the petitioner is entitled to summary judgment. Therefore, the entry will be:

Petitioner's motion for summary judgment is GRANTED; respondent's request for summary judgment is DENIED; the decision of the State Tax Assessor in the reconsideration dated November 30, 2000, in the matter of Flik International Corp. is REVERSED as in violation of statutory provisions; the matter is REMANDED to the State Tax Assessor for reconsideration in accordance with this Decision and Order.

Dated: May___20___, 2002

Donald H. Marden
Justice, Superior Court

11

Date Filed __12/22/00__ _____Kennebec_____ Docket No. __AP00-84_____

County

Action ____Petition for Review____

80C

J. MARDEN

Flik International Corporation                    vs.    State Tax Assessor

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Sarah H. Beard, Esq.<br>One Monument Square<br>Portland, Maine 04101 | Thomas A. Knowlton, AAG<br>Depart. of Attorney General<br>6 State House Station<br>Augusta ME 04333-0006 |

| Date of Entry | |
|---|---|
| 12/26/00 | Petition for Review and De Novo Determination, filed. s/Beard, Esq. (filed 12/22/00) (attached exhibit A) |
| 1/5/01 | Appearance of Thomas A. Knowlton, AAG for the Respondent, filed. s/T. Knowlton, AAG. (and no record had been made) |
| 2/8/01 | Joint Motion for An Order to Specify the Future Course of Proceedings, filed on 2/7/01. s/Beard, Esq. & Knowlton, AAG.<br>Proposed Order, filed. |
| 2/9/01 | ORDER SPECIFYING THE FUTURE COURSE OF PROCEEDINGS, Atwood, J.<br>(Discovery deadline November 16, 2001)<br>Copies mailed to attys of record. |
| 3/12/01 | Notification of Discovery Service filed s/Knowlton, AAG<br>State Tax Assessor s Response to Petitioner s First Request for Production of Documents served on Sarah H Beard Esq on 3/8/01 |
| 4/9/01 | Notification of Discovery Service, filed. s/Beard, Esq.<br>Petitioner's Response to Assessor's First Request for Production of Documents served on Thomas A. Knowlton, AAG on 4/6/01 |
| 4/19/01 | Notification of Discovery Service of State Tax Assessor's Second Request for Production of Documents served on Sarah Beard, Esq. on 4/13/01, filed. s/S. Rowe, AAG. |
| 5/17/01 | Notification of Discovery Service, filed. s/Beard, Esq.<br>Petitioner's Response to Assessor's Second Request for Production of Documents served on Thomas A. Knowlton, AAG on 5/16/01 |
| 5/29/01 | Notification of Discovery Service of Petitioner's First Request for Production of Documents served on Thomas Knowlton, AAg on 5/25/01, filed. s/S. Beard, Esq. |