OMAHA PUBLIC POWER DISTRICT,
A PUBLIC CORPORATION, APPELLANT, V.
NEBRASKA STATE TAX COMMISSIONER,
DEPARTMENT OF REVENUE,
STATE OF NEBRASKA, APPELLEE.

314 N.W.2d 246

Filed January 4, 1982.  No. 43548.

Michael L. Johnson and Stephen G. Olson of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

McCOWN, J.

This is an action by Omaha Public Power District against the Nebraska State Tax Commissioner and the Department of Revenue seeking judicial review of a sales and use tax deficiency determination in the amount of $13,116.85, plus interest and penalties. The

District Court affirmed the order of the Nebraska State Tax Commissioner determining the deficiency and dismissed plaintiff's petition.

The sales and use taxes involved are for an audit period ending August 31, 1977. Two separate factual situations are involved in the appeal and the facts in both situations are stipulated.

The first situation involves city use tax of the city of Omaha, Nebraska. Stainless steel condenser tubes were purchased by OPPD from Crucible, Inc., outside the State of Nebraska for incorporation into OPPD's power station at Nebraska City. The tubes were delivered to OPPD in Omaha, Nebraska, and stored at its Jones Street station in Omaha for approximately 1 year. The tubes were then transported to Nebraska City where they were installed in the power station. An Omaha city use tax was assessed on the purchase price of the condenser tubes. The Nebraska state use tax has been paid. Only the Omaha city use tax is involved in this appeal.

The second situation involves sales or use taxes in connection with a contract under which Harding-Williams Western Corporation, referred to as Saga, contracted with OPPD to operate a food service on OPPD's premises for OPPD's employees. Under the contract the prices charged by Saga were determined by agreement between Saga and OPPD. Saga retained the money received from the sale of the food. A state and city sales tax was paid by Saga on the sale of food to OPPD employees. In addition, Saga was to receive 4 percent of its gross sales as a management fee to be paid by OPPD. If Saga's operation resulted in a loss after the gross sales proceeds and management fee, OPPD agreed to reimburse Saga for the loss. Any profit in excess of the management fee derived from gross sales was to be paid by Saga to OPPD. Under the contract OPPD paid the management fee to Saga and reimbursed Saga for its losses. There were no profits during the audit period.

The Tax Commissioner assessed a deficiency for state and city use taxes. The District Court found that management fees and loss reimbursement payments by OPPD to Saga constituted part of the gross receipts of Saga and that such payments were subject to sales tax, and affirmed the order of the Tax Commissioner.

Neb. Rev. Stat. § 77-27,142 (Supp. 1981) provides in part: "Any incorporated municipality by ordinance of its governing body is hereby authorized to impose a sales and use tax of one half or one per cent upon the same transactions within such incorporated municipality on which the State of Nebraska is authorized to impose a tax pursuant to the provisions of the Nebraska Revenue Act of 1967, as amended from time to time."

The city of Omaha adopted a sales and use tax under that authorization "upon the same transactions within the corporate limits of the city on which the state is authorized to impose a tax pursuant to the provisions of the Nebraska Revenue Act of 1967, as amended from time to time." Omaha Municipal Code § 35-21.

With respect to the city use tax on the condenser tubes, Neb. Rev. Stat. § 77-2703(2) (Supp. 1981) provides: "A use tax is hereby imposed on the storage, use, or other consumption in this state of tangible personal property purchased, leased, or rented from any retailer on or after June 1, 1967, for storage, use, or other consumption in this state at the rate set as provided in subsection (1) of this section on the sales price of the property or, in the case of leases or rentals, of said lease or rental prices."

Neb. Rev. Stat. § 77-2702(17) (Supp. 1981) provides: "Storage shall include any retention in this state for any purposes except sale in the regular course of business or subsequent use solely outside this state of tangible personal property purchased from a retailer, other than tangible personal property which will enter into or become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail. Neither storage

nor use as defined in this subdivision shall include the keeping, retaining, or exercising of any right or power over tangible personal property for the purpose of subsequently transporting it outside the state, or for the purpose of being processed, fabricated, or manufactured into, attached to, or incorporated into, other tangible personal property to be transported outside the state and thereafter used solely outside the state."

OPPD contends that the city use tax may not validly be imposed at the point where the property is first stored in the state but only at the point of its ultimate destination, and argues that a city may not impose a use tax on property stored in the city but intended for ultimate use in another Nebraska location. To reach that result would require this court to find that the specific language of the statute was ambiguous and to rewrite the statute to meet an assumed legislative intent. We decline to do so. The practical difficulties of deferring city use taxes until the ultimate destination of the property within Nebraska has been determined are obvious. There is no threat of double taxation because the use tax is payable only once. See Neb. Rev. Stat. § 77-2708(2)(a) (Supp. 1981).

A statute is open to construction only where the language used requires interpretation or may reasonably be considered ambiguous. *State ex rel. Halloran v. Hawes,* 203 Neb. 405, 279 N.W.2d 96 (1979). The language of §§ 77-2703(2) and 77-2702(17) is specific and unambiguous and requires no interpretation. The factual situation involving the storage in Omaha and the subsequent use of the condenser tubes in Nebraska City· was subject to the use tax of the city of Omaha as well as to the Nebraska state use tax.

We turn now to the issue of sales or use taxes in connection with the food service contract between OPPD and Saga. The Tax Commissioner held that the management fee and the loss reimbursement payments by OPPD to Saga were taxable as part of the gross receipts for food sales and assessed a use tax deficiency

against OPPD. The District Court determined that the management fee and loss reimbursements constituted part of the gross receipts of Saga and that such payments were subject to sales tax, and affirmed the order of the Commissioner.

The tax involved is a sales tax rather than a use tax. Statutory definitions are determinative. Section 77-2702(13) provides in part: "Sale shall mean and include any transfer of title or possession or segregation in contemplation of transfer of title or possession, exchange, barter, lease, or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. Sale shall include:

. . . .

"(c) The furnishing, preparing, or serving for a consideration of food, meals, or drinks."

Section 77-2702(20) provides in part: "Use shall mean the exercise of any right or power over tangible personal property incident to the ownership or possession of that tangible personal property, except that it does not include the sale of that tangible personal property in the regular course of business or the exercise of any right or power over tangible personal property which will enter into or become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale at retail."

Nebraska imposes a tax upon the gross receipts from all sales of tangible personal property sold at retail in the state. See § 77-2703(1).

Section 77-2702(4)(a) provides in part: "Gross receipts shall mean the total amount of the sale or lease or rental price, as the case may be, of the retail sales of the retailers, valued in money, whether received in money or otherwise, without any deduction on account of any of the following:

"(i) The cost of tangible personal property sold. . . .

"(ii) The cost of the materials used, labor or service costs, interest paid, losses, or any other expense;

"(iii) The cost of transportation of the tangible personal property prior to its sale to the purchaser; or

"(iv) The amount of any excise or property tax levied against the tangible personal property, except as otherwise provided in sections 77-2701 to 77-27,135."

It is stipulated that state and city sales taxes were paid by Saga on the gross receipts by Saga from the sale of food to OPPD employees. No use taxes were paid by anyone.

Some courts have held that payments by an employer to a food service provider for food service to employees on the employer's premises may be taxable in certain situations. Where the price of meals was discounted to employees by a specified percentage and the employer paid the remaining percentage of the price of the meal, or where the employer paid an independent contractor the entire cost of meals furnished to employees without charge, courts have held that such payments are subject to sales tax. See, *Davis v. Chilivis*, 142 Ga. App. 679, 237 S.E.2d 2 (1977); *First Nat. Bank of Fort Worth v. Bullock*, 584 S.W.2d 548 (Tex. Civ. App. 1979).

In factual and contractual circumstances similar to those involved in the instant case, however, courts have held that payments such as those involved in the case now before us are not taxable. In *Szabo Food Service, Inc. v. State Bd. of Equalization*, 46 Cal. App. 3d 268, 119 Cal. Rptr. 911 (1975), the contracts between the employers and the food service provider were almost identical to the contract involved here. The food service was operated on the employers' premises and the food service provider paid sales tax only on the amounts received from employees on the sales. Under the contract the food service provider was to recover its expenses as well as a management fee based on a percentage of the employee sales or on a fixed fee. The California court held that the amounts paid to the food service provider by the employers were

not subject to sales tax. The court emphasized that gross receipts constituted the amounts received in consideration for the sale of tangible personal property and that only the employees' payments for the meals constituted the consideration for the sale of the meals. The subsidies paid by the employers merely guaranteed a profit to the food service operation and such subsidies could not be traced to particular sales of particular meals, nor were they a part of any scheme to avoid sales taxes.

The Supreme Court of Illinois has reached the same result in the case of *Chet's Vending Service v. Dept. of Revenue*, 71 Ill. 2d 38, 374 N.E.2d 468 (1978). In that case a caterer provided food to employees at several industrial locations under separate individual contracts. In addition to money received from food sales to employees, the caterer also received either a fixed fee from the employer or a loss reimbursement payment. The Illinois court held that the sales tax did not apply to the management fee or the subsidies and also emphasized that the payments by the employer could not be traced to any specific sale. The Illinois court determined that the evidence showed no basis for relating any portion of the fixed fee or guaranty payment to any individual sale as part of the selling price. To construe the terms "selling price" and "gross receipts" in the manner contended for by the Department of Revenue would require the court to hold that the sales at each industrial location during a calendar month constituted one sale to both the employer and the employees, the "selling price" of which was the aggregate of the sums received from the employees and the monthly payment received from the employer.

The rationale of the California and Illinois cases is logical and reasonable and we apply it here. The management fee and subsidies involved in the case now before us are paid for services rendered and not for the sale of tangible personal property. We hold that such payments are not subject to either state or city

316

sales or use taxes.

The judgment of the District Court with respect to imposition of the Omaha city use tax upon the storage in Omaha of stainless steel condenser tubes is affirmed. The judgment of the District Court imposing state and city sales taxes upon the management fee and subsidy payments made by OPPD to Saga is reversed.

AFFIRMED IN PART, AND IN PART REVERSED.

WHITE, J., participating on briefs.