REQUESTED BY: Rex Holsapple, State Investment Officer
This is in response to the series of questions you have asked regarding bond and other security requirements for depositories of public funds. Requirements for the security and payment of public funds belonging to the State of Nebraska deposited in financial institutions are reposed in the Nebraska Capital Expansion Act, Neb. Rev. Stat. §§ 72-1261 to 72-1269 (1996, Cum. Supp. 1998, and Supp. 1999) and the Public Funds Deposit Security Act, Neb. Rev. Stat. §§ 77-2386 to 77-2397 (1996, Cum. Supp. 1998 and Supp. 1999).
 I. BOND REQUIREMENTS
The first question you present concerns the providing of a deposit guaranty bond by a financial institution for purposes of securing the deposit of public funds. The state investment officer is required to have deposits of state funds secured by a guaranty bond given by the depository or by the institution furnishing securities for the safekeeping and payment of public funds. Conditions of the guaranty bond are provided for and described in the Nebraska Capital Expansion Act and the Public Funds Deposit Security Act. The specific question you ask is whether the "bond"described in Neb. Rev. Stat. § 72-1268.01 (1996) is the same as aguaranty bond described in Neb. Rev. Stat. § 77-2388 (1996). We believe that the bond described in §§ 72-1268.01 and 77-2388
refers to a "deposit guaranty bond" as defined and described under the two legislative acts.
Selected provisions of the two Acts relevant to your inquiry are set forth below.
 A. Nebraska Capital Expansion Act
The Nebraska Capital Expansion Act has particular application to the deposit of state funds in depository institutions. Provisions of this Act detail the duties and responsibilities of the state investment officer with respect to securing the safety and payment of deposited state monies.
Bond requirements are provided in Neb. Rev. Stat. §72-1268.01 (1996) which states:
 For the security of funds deposited under the Nebraska Capital Expansion Act, the state investment officer shall require all such depositories to give bond for the safekeeping of payments of such deposits. The officers of the bank or building and loan association seeking to qualify as a depository shall be ineligible to sign the bond provided for under this section. The bond shall run to the people of the State of Nebraska and shall be approved by the Governor, Secretary of State, and Attorney General. No bond shall be valid unless approved by all three of the above-named officers. The bond shall be conditioned (1) that the depository shall at the end of each and every month render to the state investment officer a statement in duplicate showing the daily balance and the amount of money of the state held by it during the month, (2) for the payment of the deposit when demanded by the state investment officer on his or her check at any time, and (3) generally to do and perform whatever may be required by the Nebraska Capital Expansion Act and a faithful discharge of the trust reposed in such depository.
The form of the bond to be given is detailed in Neb. Rev. Stat. § 72-1268.02 (1996) as follows:
The bond referred to in section 72-1268.01 shall be in substance as follows:
 Know all Persons by these Presents, That we __________ as principals, and _____________ as sureties, are held and firmly bound unto the State of Nebraska, in the just and full sum of _____________ Dollars, for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, jointly and severally, by these presents. Dated the ________ day of _______ A.D. __.
 Whereas, such bank or building and loan association, in consideration of the deposit of certain of the money of the State of Nebraska for safekeeping with and in the ____________ bank or building and loan association of _____________________ the amount whereof shall be subject to withdrawal or diminution by the state investment officer as the requirements of the state shall demand, and which amount may be increased or decreased as the state investment officer may determine.
The methodology for determining bond coverage amounts is provided for under this Act. Neb. Rev. Stat. § 72-1268.03 (1996) states:
 The state investment officer shall not have on deposit in any bank or building and loan association giving a guaranty bond more than the amount insured by the Federal Deposit Insurance Corporation plus the maximum amount of the bond given by such bank or building and loan association or in any bank or building and loan association giving a personal bond more than the amount insured by the Federal Deposit Insurance Corporation plus one-half of the amount of the bond of such bank or building and loan association. The amount deposited in any bank or building and loan association shall not exceed the amount insured by the Federal Deposit Insurance Corporation plus twice its capital stock and surplus. All bonds of such depositories shall be deposited with and held by the state investment officer.
 In lieu of the bond required by section 72-1268.01, any bank, capital stock financial institution, or building and loan association making application to become a depository under the Nebraska Capital Expansion Act may give security as provided in the Public Funds Deposit Security Act to the state investment officer. The provisions of section 77-2366
shall apply to deposits in capital stock financial institutions.
 B. Public Funds Deposit Security Act.
The Public Funds Deposit Security Act was enacted in 1996 and details the duties and responsibilities of custodial officials and governing authorities in depositing all public funds. Provisions of this Act provide for the security of public fund deposits through the furnishing of securities or by providing a deposit guaranty bond. Neb. Rev. Stat. § 77-2388 (1996) states:
 Any bank or capital stock financial institution subject to a requirement by law to secure the deposit of public money or public funds in excess of the amount insured by the Federal Deposit Insurance Corporation may give security by furnishing securities or providing a deposit guaranty bond
pursuant to the Public Funds Deposit Security Act in satisfaction of the requirement.
(Emphasis added).
A deposit guaranty bond is defined in Neb. Rev. Stat. §77-2387(4) (Cum. Supp. 1998) to mean ". . . a bond underwritten by an insurance company authorized to do business in this state which provides coverage for deposits of a governing authority which are in excess of the amounts insured by the Federal Deposit Insurance Corporation."
The bond requirement provisions of the two legislative acts are sufficiently similar to support the conclusion that the acts describe the same bond for securing the deposit of public funds.
The Nebraska Capital Expansion Act requires that the bond include provision that the depository institution provide the state investment officer with a monthly statement showing daily balances and further, that the funds be paid upon written demand of the state investment officer. See § 72-1268.02. The Public Funds Deposit Security Act similarly provides that the deposit guaranty bond be conditioned on furnishing monthly statements to the custodial official and that funds be promptly paid upon order of the public official. See § 77-2394.
The two legislative acts relate to the same subject matter, that is, the security of public funds deposited in financial institutions. The provisions of the more recently enacted Public Funds Deposit Security Act are more specific in describing bond conditions and a definition of the term, deposit guaranty bond, is included within its provisions. It is well established that courts will construe statutes relating to the same subject matter so as to maintain a consistent and sensible scheme. Becker v.Hobbs, 256 Neb. 432, 590 N.W.2d 360 (1999); FirsTier Bank, N.A. v.Department of Revenue, 254 Neb. 918, 580 N.W.2d 537 (1998). To the extent any provisions of the act are conflicting, the last in point of time or order of arrangement prevails. Hoiengs v. Countyof Adams, 254 Neb. 64, 574 N.W.2d 498 (1998).
The related question you pose concerns persons authorized to "sign" the bond. We believe the proper person to sign or execute the bond would be a corporate official authorized by the insurance company acting as the surety or guarantor. The term, deposit guaranty bond, is defined in § 77-2387 to mean a bond "underwritten by an insurance company." It is apparent that the bond cannot be signed by an officer of a financial institution seeking to qualify as a depository because of the express prohibition set forth in §72-1268.01.
 II. OTHER SECURITY REQUIREMENTS
You have asked an additional question regarding the authority of the Nebraska Investment Council to accept securities pledged as collateral by depository institutions to secure the deposit of public funds in those institutions. The specific question posed is `[d]oes this statute give us the right and authority to accept the listed securities as collateral, or does it require us to accept all "approved" securities as defined by the Public Funds Security Act?' In raising this issue, you indicate that "[t]he Nebraska Investment Council has interpreted the statute as being permissive." We understand your question to be whether the Nebraska Investment Council is authorized to restrict or limit the classes or kinds of investments it accepts or, whether the Council is required to accept any of the securities detailed in the Public Funds Deposit Security Act ("Act") as collateral or security for deposits of public funds.
Following review of the provisions of the Act, it is our conclusion that the State of Nebraska and its political subdivisions are authorized to limit or restrict the classes or types of investments that may be furnished by depository institutions for purposes of securing the deposit of public funds.
The classes and types of securities for purposes of the Act are defined and detailed by statute. Neb. Rev. Stat. § 77-2387
(Cum. Supp. 1998) in particular part provides:
(6) Securities means:
 (a) Bonds or obligations fully and unconditionally guaranteed both as to principal and interest by the United States Government;
 (b) United States Government notes, certificates of indebtedness, or treasury bills of any issue;
(c) United States Government bonds;
(d) United States Government guaranteed bonds or notes;
(e) Bonds or notes of United States Government agencies;
 (f) Bonds of any state or political subdivision which are fully defeased as to principal and interest by any combination of bonds or notes authorized in subdivision (c), (d), or (e) of this subdivision;
 (g) Bonds or obligations, including mortgage-backed obligations, issued by the Federal Home Loan Mortgage Corporation, the federal farm credit system, a Federal Home Loan Bank, or the Federal National Mortgage Association;
 (h) Securities issued under the authority of the Federal Farm Loan Act;
 (i) Loan participations which carry the guarantee of the Commodity Credit Corporation, an instrumentality of the United States Department of Agriculture;
 (j) Guaranty agreements of the Small Business Administration of the United States Government;
 (k) Bonds or obligations of any county, city, village, metropolitan utilities district, public power and irrigation district, sewer district, fire protection district, rural water district, or school district in this state which have been issued and registered as required by law or which have been issued under the direction and with the approval of the Auditor of Public Accounts;
 (l) Bonds of the State of Nebraska or of any other state which are purchased by the Board of Educational Lands and Funds of this state for investment in the permanent school fund or which are purchased by the state investment officer of this state for investment in the permanent school fund;
 (m) Bonds or obligations of another state, or a political subdivision of another state, which are rated within the two highest classifications of prime by at least one of the standard rating services;
(n) Warrants of the State of Nebraska;
 (o) Warrants of any county, city, village, local hospital district, or school district in this state; and
 (p) Irrevocable, nontransferable, unconditional standby letters of credit issued by the Federal Home Loan Bank of Topeka.
The authority of the state and political subdivisions to accept securities as defined in § 77-2387 is expressly provided for in the Act. Neb. Rev. Stat. § 77-2364 (1996) in part states, "[t]he State of Nebraska and any political subdivision in this State are hereby given the right and authority to accept such bonds or, in lieu thereof, such giving of security as provided in the act. . . ." Additional authority is set forth in Neb. Rev. Stat. § 77-2397 (1996) for accepting deposits, pledges and security interests in assets.
The legislative history of the Act has been reviewed to ascertain the scope of authority of the state and political subdivisions to restrict or limit types and classes of investments which may be accepted to secure the deposit of public funds. To the extent there is any ambiguity or lack of clarity in the provisions of an act, legislative history may be resorted to for purposes of ascertaining legislative intent. Legislative intent is the cardinal rule in statutory construction to ascertain the meaning of the provisions of an act. County of Lancaster v. Maser,224 Neb. 566, 400 N.W.2d 238 (1997); Iske v. Papio Nat. ResourcesDist., 218 Neb. 39, 352 N.W.2d 172 (1984). A statute is open to construction where the language used requires interpretation or may reasonably be considered ambiguous. Omaha P.P. Dist. v.Nebraska State Tax Commissioner, 210 Neb. 309, 314 N.W.2d 246
(1982).
The legislative history of the act supports the conclusion that the classes of investments detailed in § 77-2387 may be restricted or limited by governing authorities. Testimony at the committee hearing includes the following discourse:
 SENATOR WITEK: Now, is there a list of some kind of criteria to make sure that those are all solid for all of those . . . for all of the different organizations? I imagine that . . . I don't know, maybe part of the reason that it was inequitable to begin with was maybe some cities or some larger subdivisions required more secure investments. I mean, . . .
BOB HALLSTROM: I don't know that . . .
SENATOR WITEK: . . . I don't know how that happened.
 BOB HALLSTROM: . . . that was behind it. Originally, I think what happened was just the reverse, that as we have come along and adopted new forms of investment securities that are appropriate to be pledged, that they have been added as we went along, but have not been added uniformly to all of the political subdivisions. The Airport Authority doesn't necessarily come in and ask each and every time we add something new to the counties or the cities or for the State Treasurer. The other thing that I'd note on that is that, obviously, there are differences within the investments, and if there is any particular subdivision that has a question regarding the appropriateness of a particular investment that's listed on the statutory laundry list, they can and do routinely pass board resolutions to limit the types of securities, for example, that they will accept. Some bankers get frustrated with that, but that is the law and that's the way that it's designed to work. Is it . . . if the particular board feels that, I know what U.S. government securities are and I feel comfortable with them and I'd just as soon have that and nothing else, they can pass a resolution to that effect and that's what they get.
 SENATOR WITEK: So the state law will contain all the possibilities, but they can still be looked at carefully and adopted by the local decision makers?
 BOB HALLSTROM: Ultimately, the local board makes the decision as to how much of that list the bank has the flexibility to draw from.
 SENATOR WITEK: So the bank doesn't make that decision, the local elected officials do?
BOB HALLSTROM: That is correct.
Hearing on LB 1274, 94 Session Legis. 1996, p. 19 (Feb. 5, 1995) (Statements of Senator Kate Witek and Robert Hallstrom, representing NE Bankers Assn.).
In summary, it is our opinion that the bond requirements of the two acts refer to a deposit guaranty bond underwritten by an insurance company. It is further our opinion that the Nebraska Investment Council, acting through the State Investment Officer, is authorized to restrict the types and classes of investments furnished by depository institutions to secure the deposit of public funds.
Sincerely,
 DON STENBERG Attorney General
 Fredrick F. Neid Assistant Attorney General
Approved:
DON STENBERG, Attorney General