REQUESTED BY: Rex Holsapple, State Investment Officer
We are responding to the series of questions you have asked concerning alternative methods of securing the deposit of state funds provided by the Public Funds Deposit Security Act, Neb. Rev. Stat. §§ 77-2386 to 77-2397 (1996, Cum. Supp. 1998 and Supp. 1999) as amended by 2000 Neb. Laws, LB 932. LB 932 was passed with the emergency clause and approved by the Governor on April 13, 2000.
 I. ALTERNATIVE METHODS FOR SECURING PUBLIC FUNDS
The first issue relates to new legislative provisions that authorize depository institutions to secure deposits of public funds by providing a deposit guaranty bond or by pledging or granting a security interest in a single pool of securities. The specific question posed is whether the Nebraska Investment Council and the state investment officer are "required to accept a security interest in the securities pool or guaranty bond for our deposit of public funds as it relates to the TDOA program or is this only an alternative method that can be accepted by our council?" It is our opinion that the Investment Council is required to accept the alternative methods outlined in LB 932 for securing deposits of public funds. Discretion is vested with the depository institution for utilizing an alternative method of securing public fund deposits.
Section 43 of LB 932 in relevant part states:
 (1) As an alternative to the requirements to secure the deposit of public money or public funds in excess of the amount insured by the Federal Deposit Insurance Corporation pursuant to sections 77-2389 and 77-2394, a bank or capital stock financial institution designated as a public depositary may secure the deposits of one or more governmental units by providing a deposit guaranty bond or by depositing, pledging, or granting a security interest in a single pool of securities to secure the repayment of all public money or public funds deposited in the bank or capital stock financial institution by such governmental units and not otherwise secured pursuant to law, if at all times the total value of the deposit guaranty bond is at least equal to the amount on deposit which is in excess of the amount so insured or the aggregate market value of the pool of securities so deposited, pledged, or in which a security interest is granted is at least equal to one hundred five percent of the amount on deposit which is in excess of the amount so insured. Each such bank or capital stock financial institution shall carry on its accounting records at all times a general ledger or other appropriate account of the total amount of all public money or public funds to be secured by a deposit guaranty bond or by the pool of securities, as determined at the opening of business each day, and the total value of the deposit guaranty bond or the aggregate market value of the pool of securities deposited, pledged, or in which a security interest is granted to secure such public money or public funds.
The language set forth in the legislative act authorizes the depository institution to utilize alternative methods. The rules of statutory construction related to use of the word "may" in legislative enactments indicates permissive or discretionary action. Neb. Rev. Stat. § 49-802 (1998) states in relevant part:
 Unless such construction would be inconsistent with the manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter enacted shall be as follows:
 (1) When the word may appears, permissive or discretionary action is presumed. . . .
The Nebraska Supreme Court has applied rules of statutory interpretation to the word "may" consist with § 49-802. That is, unless inconsistent with the intent of the legislature, when the word "may" appears in a statute it is permissive and discretionary. See Anderson v. Carlson, 171 Neb. 741,107 N.W.2d 535 (1961); Roy v. Bladen School Dist. No. R-31, 165 Neb. 170,84 N.W.2d 119 (1957).
It is also inquired, "[i]f our council does not want to accept the securities or guaranty bond as collateral, do we have the authority to decline it as collateral?" As we have concluded above, the Investment Council is required to accept the alternative methods of providing security for the repayment of public funds as set forth in § 43 of LB 932. Further legislative provision is necessary to authorize the Investment Council to decline the alternative methods of providing security by depository institutions.
 II. SECURITIES ACCEPTABLE AS COLLATERAL
The second issue relates to the classes and types of securities that may be included in a pool of securities used to secure deposits of public funds. It is asked, "[d]o we have the authority to restrict the securities we will allow in the collateral pool, in which we have a security interest?" The Investment Council and the state investment officer have only that authority to limit the securities included in a single pool of securities accepted as collateral to those securities detailed in Neb. Rev. Stat. § 77-2387 (Cum. Supp. 1998) as amended by § 39 of LB 932.
It is the express duty of the "qualified trustee" to determine whether individual securities included in a single pool of securities are authorized by statute. Section 45 of LB 932 provides that any depository institution providing a single pool of securities shall designate a qualified trustee for holding the securities pledged, deposited, or in which a security interest has been granted. Further, § 43 in part states:
 (2) Only the securities listed in subdivision (10) of section 77-2387 may be provided and accepted as security for the deposit of public funds and shall be eligible as collateral. The qualified trustee shall accept no security which is not listed in subdivision (10) of section 77-2387.
Accordingly, the state investment officer and the Investment Council cannot specify that only "government agencies or treasuries" be included in the investment pool of securities to secure the repayment of public funds. Administrative officers and agencies have only that power which is granted by the legislature, thus, their power is limited to those delineated by statute.Stoneman v. United Nebraska Bank, 254 Neb. 477, 577 N.W.2d 271
(1998); Jolly v. State, 252 Neb. 289, 562 N.W.2d 61 (1997).
The legislative history supports the conclusion that it is the duty of the qualified trustee to determine which securities are acceptable in a pool of securities to secure deposits of public funds. To the extent there is any ambiguity or lack of clarity in the provisions of an act, the legislative history may be resorted to for purposes of ascertaining legislative intent.See County of Lancaster v. Maser, 224 Neb. 566, 400 N.W.2d 238
(1987); Iske v. Papio Nat. Resources Dist., 218 Neb. 39,352 N.W.2d 172 (1984); Omaha P. P. Dist. v. Nebraska State TaxCommissioner, 210 Neb. 309, 314 N.W.2d 246 (1982). The floor debate on LB 932 includes the following discourse regarding the function of the qualified trustee:
 SENATOR BEUTLER: Mr. Speaker, members of the Legislature, I consider these very friendly amendment [sic]. Both of them are designed . . . both of the concepts, other than a third very technical one, both of the concepts are designed to try to protect the public entity or the public official known in the bill as the custodial official, who's relying upon these securities to protect the public funds. And part of this process involves only certain securities being placed in . . . in with the trust, and these securities are identified specifically in the statutes and are on the very conservative side of the investment portfolio possibilities. So what this amendment says is that the qualified trustee, the one who's going to be holding these deposits, shall not accept any security which is not listed in subsection (10). That's . . . those are the list . . . lists . . . that's the list of the acceptable securities. And the reason for that is it makes . . . it makes it clearly the responsibility of the trustee to be sure that the bank is not putting in there any securities that are less than those conservative ones outlined in subsection (10). In other words, the custodial official can rely upon the trustee and less sophisticated custodial officials that perhaps represent small towns or small school districts and don't have the background or don't have the time to be checking out and trying to determine whether every individual security they see on a list is a proper security or improper security. Does away with all of that and relies upon the trustee and basically says you don't accept any securities that are not subsection (10) securities. That's the one thing the amendment does. . . . (emphasis added).
PRESIDENT MAURSTAD: Senator Landis.
 SENATOR LANDIS: Mr. President, members of the Legislature, I accept the Beutler amendment. I think there's, in fact, a dual level of protection but he makes it explicit as to that second level of protection. The bank itself has an obligation to make sure that these securities are appropriate, but this also makes explicit that the qualified trustee needs to have that duty as well, as well as the . . . as well as the statements. And, towards that end, having all parties understand is reasonable. I accept the amendment.
Floor Debate on LB 932, 96th Neb. Leg., 2nd Sess. pp. 13013, 13014 (Apr. 6, 2000).
 III. THE QUALIFIED TRUSTEE AND THE TRUST RELATIONSHIP
The third issue raised by your questions concerns the designation of the trustee and the trust arrangement entered into. You inquire whether the custodial official has the right to approve the trustee or is it solely at the discretion of the depository institution. By express provision of LB 932, it is within the sole discretion of the depository institution to designate the trustee. The new provisions do not include any provision for approval of the qualified trustee by custodial officials. Rather, § 45 provides that the depository institutions shall designate a qualified trustee by giving notice to the custodial official. This section also provides that "[t]he custodial official shall accept the written receipt of the trustee describing the pool of securities so deposited, pledged, or in which a security interest has been granted. . . ."
It is further asked whether the custodial official has "the right to be involved in the design of the trust agreement?" You state that the Investment Council or a custodial official may wish to be involved in the completion (design) of a trust agreement because the duties of the trustee for implementation of the alternative methods of securing public deposits. As you have noted, LB 932 does not include any provision for completion of a trust agreement nor any express provision authorizing a custodial official to have any involvement with the preparation of a trust agreement. The designation of a trustee is the express responsibility of the depository institution and it is the duty of the trustee to take the actions necessary to effect a perfected security interest and protect the beneficial interest of the government units whose funds are deposited.
We believe that a copy of the governing document creating the trust relationship should be furnished to custodial officials to ascertain that the provisions of LB 932 are complied with. It is probable that the "designation" of a qualified trustee shall serve as the written document establishing the trust relationship. Section 45 of LB 932 does require that a depository institution "give written notice of the designation of the qualified trustee" to custodial officials. Understandably, a custodial official is interested in the trust relationship and the effective implementation of the alternative methods authorized by LB 932 to secure the deposits of public funds.
Governmental units whose funds are deposited have a beneficial interest and a security interest in the single pool of securities pledged to secure repayment of the deposits. Since a trust relationship exists, it is appropriate that custodial officials review the trust document or designation prepared to appoint the trustee to assure compliance with statutory requirements. The governmental units whose funds are deposited are beneficiaries under the trust relationship that is established. It is well settled that trust beneficiaries have the right to enforce the provisions of a trust. See Mischke v.Mischke, 253 Neb. 439, 571 N.W.2d 248 (1997); Goble v. Swobe,64 Neb. 838, 90 N.W. 919 (1902). Review of the trust document establishing the trust relationship would facilitate enforcement of the trust by custodial officials.
The additional question you ask is whether the Investment Council may address its participation in preparation of the trust agreement by rules and regulations. We think it is appropriate that the Investment Council promulgate rules and regulations to address review of the trust document because of the trust relationship entered into if a depository institution utilizes a pool of securities as a method of securing deposits of public funds.
The Investment Council is authorized by the Nebraska Capital Expansion Act, Neb. Rev. Stat. §§ 72-1261 to 72-1269 (1996, Cum. Supp. 1998, and Supp. 1999) to adopt rules and regulations to establish procedures for distribution of funds to depository institutions. See Neb. Rev. Stat. § 72-1266 (1996). Of course, rules and regulations promulgated to address the "trust agreement issue" cannot exceed and must be consistent with the legislative standards set forth in LB 932. As we recently pointed out in Op. Att'y Gen. No. 00028 (June 5, 2000), to be valid, a rule or regulation which an agency creates must be consistent with the statute under which the rule or regulation was promulgated.FirsTier Bank, N.A. v. Department of Revenue, 254 Neb. 918,580 N.W.2d 537 (1998); Robotham v. State, 241 Neb. 379, 488 N.W.2d 533
(1992).
Sincerely,
 DON STENBERG Attorney General
 Fredrick F. Neid Assistant Attorney General
Approved:
DON STENBERG, Attorney General